O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN ALEN GREENSHIELDS,<br><br>               Petitioner,<br><br>        v.<br><br>STIRLING PRICE,[1]<br><br>               Respondent. | Case No. LA CV 15-5348 JCG<br><br>**MEMORANDUM OPINION AND ORDER DISMISSING PETITION FOR WRIT OF HABEAS CORPUS WITH PREJUDICE AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY** |

## I.

## BACKGROUND

In 1993, a jury found petitioner Sean Alen Greenshields ("Petitioner") not guilty of attempted murder by reason of insanity. [Dkt. No. 17-2 at 78]; *see also People v. Greenshields*, 2014 WL 3400972, at *1 (Cal. Ct. App. July 14, 2014). As a result, the San Luis Obispo County Superior Court committed him to a state hospital for a term of thirteen years, with a maximum commitment date of July 2, 2012. *See Greenshields*, 2014 WL 3400972, at *1. Subsequently, Petitioner's commitment was extended

---

[1]     The Court **DIRECTS** the Clerk of Court to update the case caption to reflect Stirling Price as the proper Respondent. *See* Fed. R. Civ. P. 25(d); [*see also* Dkt. No. 16 at 9].

1   pursuant to California Penal Code Section 1026.5 ("Section 1026.5").  [Dkt. No. 17-2
2   at 48.]

3       In 2005, while serving his commitment, Petitioner attacked a psychiatrist at the
4   state hospital, and was subsequently charged with, *inter alia*, attempted murder in the
5   San Bernardino County Superior Court.  *See Greenshields*, 2014 WL 3400972, at *1.
6   On March 5, 2007, Petitioner entered into a plea agreement ("Plea Agreement"), in
7   which he: (1) pled guilty to and was convicted of attempted murder; (2) was sentenced
8   to a "total of 10 years" in state prison, which was "to be served concurrent to any other
9   time [Petitioner] is obligated to serve"; (3) received credit for approximately 784 days
10  served; and (4) obtained a dismissal of all other pending charges.  [Dkt. No. 17-2 at 72,
11  90, 94-96]; *see also Greenshields*, 2014 WL 3400972, at *1.  Although it is not clear
12  from the record, it appears that Petitioner served approximately two years in state
13  prison before being returned to the state hospital in 2010 for mental health treatment.
14  *See Greenshields*, 2014 WL 3400972, at *1.

15      In 2010, the San Luis Obispo County Superior Court extended Petitioner's
16  commitment to 2012, pursuant to Section 1026.5.  [Dkt. No 17-2 at 48]; *see also
17  Greenshields,* 2014 WL 3400972, at *1.  On February 21, 2012, an assistant district
18  attorney for San Luis Obispo County filed a petition for additional extended
19  commitment under the same statute.  [*See* Dkt. No. 17-2 at 29]; *see also Greenshields*,
20  2014 WL 3400972, at *2.  On March 6, 2012, Petitioner filed a petition for writ of
21  habeas corpus in the San Luis Obispo County Superior Court, seeking: (1) a finding
22  that his sanity had been restored as a result of his conviction and sentence; (2) to set
23  aside his most recent commitment; and (3) a return to prison to serve the remainder of
24  his 10-year sentence.  [Dkt. No. 17-2 at 49, 82]; *see also Greenshields,* 2014 WL
25  3400972, at *2.  On May 23, 2012, the court denied the petition, and held that:

26

27  //

28

1
2
3
4

> Petitioner's legal sanity was not contested in the San Bernardino
> Court. . . . Consequently, there was never a legal determination of
> Petitioner's restoration of sanity . . . . There is no authority that a finding of
> guilt in a subsequent proceeding is akin to a legal restoration of the
> Petitioner's sanity. To find otherwise would circumvent the due process and
> procedural safeguards of Penal Code § 1026.2.

5
6   [Dkt. No. 17-2 at 82]; *see also Greenshields*, 2014 WL 3400972, at *2. On August 30,
7   2012, the superior court granted the assistant district attorney's petition, and on
8   September 14, 2012, issued an order (the "Recommitment Order"): (1) finding that
9   "[t]he [Petitioner] by reason of a mental disease, defect, or disorder represents a
10  substantial danger of bodily harm to others and is therefore a person properly subject
11  to the provisions of [Section 1026.5] [beyond a reasonable doubt]"; and (2) ordering
12  that Petitioner be remanded to "Atascadero State Hospital for further treatment for the
13  term prescribed by law UNTIL JULY 2, 2014."[2] [Dkt. No. 17-2 at 109-110, 116-117
14  (capitalization in original).]

15        On July 14, 2014, the California Court of Appeal ("Court of Appeal") affirmed
16  the Recommitment Order. *Greenshields*, 2014 WL 3400972, at *3. On September 24,
17  2014, the California Supreme Court denied Petitioner's petition for review. [Dkt. No.
18  17-13.]

19        On July 15, 2015, Petitioner filed the instant Petition for Writ of Habeas Corpus
20  ("Petition"). [Dkt. No. 1.] On October 19, 2015, former respondent Linda Persons
21  filed a motion to dismiss the Petition on standing and mootness grounds. [Dkt. No. 9.]
22  The Court subsequently denied the motion to dismiss, and ordered a return to the
23  Petition on the merits. [Dkt. No. 15.] On November 17, 2016, current respondent
24  Stirling Price ("Respondent") filed a Return to the Petition. [Dkt. No. 16 at 9.]

25
26  //

27
28  _____
[2]      Petitioner is currently still a patient at the Atascadero State Hospital pursuant to a separate
2014 commitment order. [Dkt. No. 1 at 1; Dkt. No. 9 at 6.]

## II.

## DISCUSSION

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts may grant habeas relief only where a state court's decision was contrary to, or an unreasonable application of, clearly established Supreme Court authority, or was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  It is a highly deferential standard that is difficult to meet.  *Harrington v. Richter*, 562 U.S. 86, 102, 105 (2011).

Petitioner asserts four grounds for relief, all of which fail on this record.  *See* 28 U.S.C. § 2254(d) (Antiterrorism and Effective Death Penalty Act) ("AEDPA"); *Harrington*, 562 U.S. at 101-02.

### A.    **Ground One: Estoppel**

In ground one, Petitioner asserts that the state courts "affirmed extended commitment" despite acknowledging "that estoppel prevented [] the renewed commitment."  [Dkt. No. 1 at 5; Dkt. No. 13 at 9.]  Essentially, Petitioner challenges the Recommitment Order on the grounds that: (1) his sanity was implicitly restored as a result of the negotiated Plea Agreement and prison sentence outlined therein; and (2) the State was judicially estopped from arguing for Petitioner's extended commitment due to such restoration.  [*See id.*]  This argument fails for two reasons.

First, as a rule, challenges to "a state court's application of state law concerning [] estoppel . . . does not state a cognizable claim of a violation of federal law." *Carrizosa v. Woodford*, 388 F. App'x 676, 677 (9th Cir. 2010); *see also Bankuthy v. Yates*, 376 F. App'x 694, 695 (9th Cir. 2010) ("[Petitioner]'s estoppel contention does not state a violation of federal law and is thus not cognizable in [habeas] proceedings.").

Notably, the Court of Appeal looked to state law to determine the applicability of judicial estoppel, and found Petitioner's argument unavailing because:

The People did not take inconsistent positions concerning [Petitioner's] sanity.  In the [S]ection 1026 proceedings, the People took the position that [Petitioner] was insane.  In the San Bernardino case, the People took no position concerning [Petitioner's] sanity.  The issue was not adjudicated.  . . .  The People did not . . . implicitly recognize [Petitioner's] restored sanity when it charged him with attempted murder.

*Greenshields*, 2014 WL 3400972, at *2-3 (internal citations omitted).  As such, Petitioner's challenge to the Court of Appeal's determination that judicial estoppel was inapplicable is not cognizable on federal habeas review.

Second, Petitioner does not reference any clearly established Supreme Court authority prohibiting the recommitment of a habeas petitioner who: (1) was found not guilty of a crime by reason of insanity and thus committed to a state hospital; (2) then served time in state prison for a separate crime; (3) was subsequently returned to a state hospital for mental health treatment; and (4) was proven, beyond a reasonable doubt, to be a substantial danger of bodily harm to others due to a mental illness.  *See* 28 U.S.C. § 2254(d)(1); *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (holding that a state court cannot have "unreasonably applied" clearly established federal law if no Supreme Court precedent has squarely answered the question presented); *c.f. U.S. ex rel. Oliver v. Jones*, 2007 WL 2409843, at *4-5 (N.D. Ill. Aug. 22, 2007) ("Judicial estoppel is an equitable doctrine designed to protect the integrity of the judicial process; it is not mandated by the Constitution, laws, or treaties of the United States.").

As such, Petitioner's first claim in support of the Petition fails.

## B.   Ground Two: Breach Of Plea Agreement

In ground two, Petitioner claims that "[t]he state courts violated [] standards regarding enforcement of contractual plea bargains."  [Dkt. No. 1 at 5.]  Essentially, Petitioner argues that the Recommitment Order breached the Plea Agreement.  [*See id;* Dkt. No. 18 at 10.]

As the Supreme Court held, "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the

5

1  inducement or consideration, such promise must be fulfilled." *Santobello v. New York,*
2  404 U.S. 257, 262 (1971).  "In determining whether a plea agreement has been
3  breached, contract law principles apply." *Koppi v. Valenzuela,* 2014 WL 6896117, at
4  *17 (C.D. Cal. Oct. 28, 2014).  Notably, "if the terms of the agreement are disputed,
5  the [petitioner]'s contention regarding his subjective understanding is not dispositive;
6  rather, any dispute over the terms of the agreement must be determined by objective
7  standards." *Id.*  Furthermore, a petitioner must "provide sufficient evidence to support
8  his claim that [the] plea agreement [was violated]." *Backes v. Curry*, 2011 WL
9  1363791, at *5 (N.D. Cal. Apr. 11, 2011).

10    Here, the Plea Agreement states that Petitioner's sentence was "a total of 10
11  years in state prison" in return for "dismiss[al] of all remaining counts."  [Dkt. No. 17-
12  2 at 95.]  Importantly, the Plea Agreement makes no mention of Petitioner's restoration
13  of sanity, and confirms that "[e]xcept otherwise stated herein, no one has promised or
14  suggested to [Petitioner] that [he] will receive a lighter sentence, probation, reward,
15  immunity, or anything else to get [him] to plead guilty[] . . . ."  [*See id.*]

16    Moreover, and pursuant to the Plea Agreement, because Petitioner's prison
17  sentence was to be served concurrent to "any other *time*" that Petitioner was obligated
18  to serve, the Recommitment Order extending Petitioner's stay in a state hospital did
19  not violate the terms of the Plea Agreement.  [*See* Dkt. No. 17-2 at 95 (emphasis
20  added).]  As the Court of Appeal cogently explained:

22    An extended commitment does not violate the terms of the San Bernardino
      plea agreement.  In the San Bernardino case, the parties agreed that
23    Greenshields would serve 10 years in state prison 'concurrent to any other
24    time [Petitioner] is obligated to serve.'  [Petitioner] was not obligated to
      serve any other *prison time*.  His mental health commitment *is not a prison
25    term*.  He *cannot serve a prison sentence* until his sanity is restored.

27  //

1   *Greenshields*, 2014 WL 3400972, at *3 (emphases added).  As such, the

2   Recommitment Order did not violate the 10-year sentence term in the Plea Agreement,

3   as the term required *prison* time and made no exception for hospital commitments.

4          Accordingly, because "there is no mention of any [term or provision supporting

5   Petitioner's contention] anywhere in the [P]lea [A]greement or elsewhere in the record

6   before this Court, and [P]etitioner's self-serving and unsupported allegations cannot

7   demonstrate a breach of his [P]lea [A]greement," Petitioner's second claim fails.  *See*

8   *Cervantes-Tamayo v. Walker*, 2011 WL 1152724, at *4 (C.D. Cal. Mar. 2, 2011).

9          **C.     Claim Three: *Foucha* and Equal Protection**

10         In ground three, Petitioner claims that the "State's failure to uphold resolution of

11  its interests via criminal conviction was contrary to federal [*Foucha*] standards and

12  rights to equal protection."  [Dkt. No. 1 at 6.]  Petitioner appears to claim that the

13  Recommitment Order was: (1) contrary to the United States Supreme Court's decision

14  in *Foucha v. Louisiana*, 504 U.S. 71 (1992); and (2) in violation of his Equal

15  Protection rights under the Fourteenth Amendment.  [Dkt. No. 1 at 6.]

16         In *Foucha*, the Supreme Court struck down a Louisiana statute that permitted

17  the state to confine insanity acquittees for an indefinite duration based on

18  dangerousness grounds alone.  *See Foucha*, 504 U.S. at 83 ("We decline to [hold that]

19  a law like Louisiana's, which permits the indefinite detention of insanity acquittees

20  who are not mentally ill but who do not prove they would not be dangerous to others[,]

21  [is permitted by the Due Process Clause].").

22         Here, Petitioner fails to show how the Recommitment Order is contrary to the

23  holding in *Foucha*, as Petitioner was *not* committed to a state hospital based on

24  dangerousness grounds alone.  Instead, the San Luis Obispo County Superior Court

25  found that: "[Petitioner] by reason of a *mental disease, defect, or disorder* represents a

26  substantial danger of bodily harm to others . . . ."  [Dkt. No. 17-2 at 116 (emphasis

27  added).]

28

Furthermore, with respect to the Equal Protection claim, Petitioner "has not alleged that membership in a protected class was the basis of any alleged discrimination, or that there was any intentional treatment of Petitioner that was different from the treatment of any similarly situated individuals." *Burgess v. Rios*, 2012 WL 2609322, at *4 (E.D. Cal. July 5, 2012).

As such, Petitioner fails to show that there is clearly established law, either under *Foucha* or under the Fourteenth Amendment's Equal Protection clause, recognizing a constitutional challenge to the extended commitment of an individual found to be a substantial danger to others because of mental illness. *See* 28 U.S.C. § 2254(d). Accordingly, Petitioner's third claim fails.

### D.   Claim Four: Taxpayer Burden

In ground four, Petitioner claims that the "State hospital commitment and confinement imposes unlawful burden[s] on state and federal taxpayers and on Petitioner." [Dkt. No. 1 at 6.]

As a rule, the Court entertains a federal habeas petition "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Notably, "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994).

Here, Petitioner states that it is unlawful to have taxpayer funds be used to support mental health commitments, but fails to explain: (1) how or under what federal law this is so; and (2) how he is "in custody" in violation of such federal law. *Cf. Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 134 (2011) ("This Court has rejected the general proposition that an individual who has paid taxes has a 'continuing, legally cognizable interest in ensuring that those funds are not *used* by the Government in a way that violates the Constitution.'" (emphasis in original)).

As such, Petitioner's fourth claim fails, and the Petition does not merit habeas relief.

### E.   Certificate of Appealability

Additionally, for the reasons stated above, the Court finds that Petitioner has not shown that "jurists of reason would find it debatable whether": (1) "the petition states a valid claim of the denial of a constitutional right"; *and* (2) "the district court was correct in its procedural ruling."  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Thus, the Court declines to issue a certificate of appealability.

## III.

## ORDER

For the foregoing reasons, **IT IS ORDERED THAT:**

1.      The Petition be **DISMISSED WITH PREJUDICE**;

2.      A Certificate of Appealability be **DENIED**; and

3.      Copies of this Order be **SERVED** on the parties.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  December 19, 2016                    _____

                                                            HON. JAY C. GANDHI
                                                  UNITED STATES MAGISTRATE JUDGE


***

**This Memorandum Opinion and Order is not intended for publication.  Nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

***